IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

GZ CONSTRUCTION ST, INC., ET AL.,

Defendants.

CIVIL NO. 15-1025 (GAG)

**OPINION AND ORDER**

Plaintiff, the United States of America, brought this action to collect unpaid federal income tax liabilities assessed against Defendant, GZ Construction, Inc. ("GZ Construction"), for several tax periods between December, 2005, and December, 2012. (Docket No. 1 at 1-2.) The United States commenced this action, pursuant to 26 U.S.C. § 7402, to reduce to judgment tax assessments made against GZ Construction. Id. at 2-3. Additionally, the Government claims Defendant Edgardo Guillén-Bermúdez, in his personal capacity as GZ Construction's President and sole officer, committed tortious conversion by intentionally depriving the United States of its right to property encumbered by a federal tax lien. Id. at 3-5.

Presently before the court is Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 16.) After reviewing the submissions and the applicable law, the court **DENIES** Defendants' motion to dismiss at Docket No. 16.

**Civil No. 15-1025 (GAG)**

I. **Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), which discusses Iqbal, 556 U.S. at 662 and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d at 55. Second, the court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is

**Civil No. 15-1025 (GAG)**

liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

## II. Relevant Factual and Procedural Background

Defendant GZ Construction has its principal offices in Puerto Rico. (Docket No. 1 ¶ 2.) Defendant Edgardo Guillén-Bermúdez was GZ Construction's President and sole officer during the tax periods in question. Id. ¶ 3. A delegate of the Secretary of Treasury properly and timely assessed GZ Constructions' tax liabilities on nine different occasions from December 4, 2006, to April 2, 2012.[1] Id. ¶ 4. The Government informed Defendants of each assessment, and demanded payment of $146,773.83 for those liabilities. Id. ¶¶ 4-5.

GZ Construction failed to satisfy its obligation. Id. ¶ 6. Consequently, federal tax liens attached upon all property and rights to property belonging to GZ Construction in an amount equal to the unpaid assessments, plus interest and other statutory additions to the tax liability generated. Id. ¶¶ 9-10. Notices of Federal Tax Lien were filed for each period that GZ Construction generated tax liabilities.[2] Id. ¶ 10. The most significant asset subjected to a federal tax lien was a 2005 Cessna Skyhawk 172S, a fixed-wing, single-engine aircraft ("the Aircraft"), with Serial Number 172S9777 and Federal Aviation Administration (FAA) registration number N066025, purchased on or about November 28, 2005, for $182,200.00. (Docket No. 1 ¶ 11.)

---

[1] Timely tax assessments for unpaid federal income tax liabilities were made against Defendant on the following dates: December 4, 2006 for the September 30, 2006 tax period; March 12, 2007 for the December 31, 2006 tax period; June 25, 2007 for the March 31, 2007 tax period; September 10, 2007 for the June 30, 2007 tax period, March 30, 2009 for the December 31, 2007 tax period, and March 7, 2011 for the March 31, 2010 tax period. (Docket No. 1 at ¶ 4.) Timely assessments for federal unemployment liabilities were made on the following dates: March 6, 2006 for the December 31, 2005 tax period; March 22, 2010 and April 2, 2012 for the December 31, 2009 tax period; and July 11, 2011 for the December 31, 2010 tax period. Id.

[2] Timely Notice of Federal Tax Lien against GZ Construction property or property rights were recorded on the following dates: October 26, 2007 for the December 31, 2005 tax period; October 19, 2007 and December 18, 2007 for the September 30, 2006 tax period; October 19, 2007 and December 18, 2007 for the December 31, 2006 tax period; October 19, 2007 and December 18, 2007 for the March 31, 2007 tax period; October 19, 2007 and December 18, 2007 for the June 30, 2007 tax period; June 18, 2009 for the December 31, 2007 tax period, May 2, 2012 for the December 31, 2009 tax period; March 14, 2011 for the March 31, 2010 tax period; August 12, 2011 for the December 31, 2010 tax period. (Docket No. 1 at ¶ 10.)

**Civil No. 15-1025 (GAG)**

In the early Fall of 2007, the IRS began levying GZ Construction's revenue stream in an attempt to enforce collection for its outstanding tax liabilities. Id. ¶ 12. By early 2010, GZ Construction's revenue stream had ceased and their only considerable asset left was the Aircraft. Id. ¶ 13. Between February 25, 2010, and August 3, 2010, the IRS Revenue officer contacted Defendant Guillén and explained that he had to sell the Aircraft to satisfy GZ Construction Tax Liabilities, otherwise, the IRS could seize the Aircraft. Id. ¶ 14. On or about August 4, 2010, Defendant instead transferred the title of the Aircraft to his son, Ian Edgardo Guillén. Id. ¶ 15. The Aircraft was then sold to a third party on or about October 27, 2010, for approximately $143,000.00. Id. ¶ 16. On or about December 10, 2010, Defendant Guillén admitted to the revenue officer that the Aircraft's proceeds had been used to satisfy GZ Construction's other creditors, despite the federal tax liens. Id. ¶ 17.

As of December 2, 2013, GZ Construction remains indebted to the United States in the amount of $146,773.83, plus statutory interest, penalties, and fees for collection costs that continue to accrue. Id. ¶ 7.

**III. Discussion**

In support for their motion to dismiss, Defendants first argue the Government has failed to plead sufficient facts in order to reduce a tax assessment to judgment because there are no assets from which to collect the remaining balance. (Docket No. 16 at 4.) The Government counters that because the IRS properly assessed and demanded payment of its tax liabilities, and Defendants still remain liable for $146,773.83, it has asserted enough facts to state a plausible cause of action regardless of whether there are funds available for collection. (Docket No. 18 at 2.) Second, Defendant Guillén claims that the IRS is barred from assessing tax liabilities against him because his individual tax liability was not assessed within the three-year statute of limitations period.

**Civil No. 15-1025 (GAG)**

(Docket No. 16 at 5.) However, the Government asserts that specifically at issue in this case is only whether Defendant Guillén is personally liable for tortious conversion of federal tax liens, and not whether he is individually accountable for any tax assessments. (Docket No. 18 at 6.) Thus, the Government contends that Defendant Guillén's argument that the United States' tax claims are time-barred lacks merit. Id.

**A. Reduce to Judgment Outstanding Tax Liabilities of GZ Construction**

The United States has "a number of distinct enforcement tools available . . . for the collection of delinquent taxes." U.S. v. Rodgers, 461 U.S. 677, 682 (1983). "The Government may, for example, simply sue for the unpaid amount, and, on getting a judgment, exercise the usual rights of a judgment creditor." Id. (referencing 26 U.S.C. § 6502(a), 7401, 7402(a)). Under 26 U.S.C. § 7402(a), Congress conferred upon district courts "jurisdiction . . . to render such judgments . . . as may be necessary and appropriate for the enforcement of the tax laws." 26 U.S.C. § 7402(a); see also Rodgers, 461 U.S. at 682-83.

The IRS has the authority to "make assessments of all [of taxpayer's] unpaid taxes" and then enforce collection of the liabilities. U.S. v. Berk, 374 B.R. 385, 391 (D. Mass. 2007). Certificates of assessments are presumed correct, so the taxpayer must present specific evidence to contest an assessment. Berk, 374 B.R. at 391; U.S. v. Hughes, 44 F. Supp. 3d 169, 171-172 (D. Mass. 2014). "Once the IRS makes an assessment of tax liability, it must 'give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof' within 60 days of the assessment." Berk, 374 B.R. at 391 (citing 26 U.S.C. § 6303).

Defendants provide no authority or case law to support the proposition that there must be funds available in order for the district court to reduce a tax assessment to judgment. The complaint in this case contains sufficient factual allegations to support a claim to reduce to

5

judgment tax assessments made against GZ Construction. The Government commenced this action at the direction of the Attorney General and with authorization from the IRS. (Docket No. 1 at 1.) The United States claims to have performed nine different assessments, each which serve as notification of the liability assessed. Id. ¶¶ 4. In its motion to dismiss, Defendants failed to offer any specific evidence to challenge the validity of the assessments, and thus, the complaint satisfies its initial burden of proof. Defendants argument that since there are no assets from where to collect the tax liabilities the tax claim cannot be reduced to a judgment is unavailing because the cause of action does not require the existence of assets or lack of thereof.

The Government has alleged that as of December 2, 2013, GZ Construction owed the Government $146,773.83 in unpaid taxes that were properly assessed, and despite the IRS' multiple demands for payment, Defendants failed to make payment. Id. ¶¶ 5-7. Because the Government has demonstrated that GZ Construction remains liable to the United States for outstanding taxes for which this court has jurisdiction to reduce to judgment, Defendants' motion to dismiss this claim is **DENIED**.

**B. Edgardo Guillén Bermudez's Tortious Conversion of Federal Tax Liens**

The Government's second claim for relief is against Defendant Edgardo Guillén Bermudez personally, for tortious conversion of valid federal tax liens that attached upon the Aircraft. (Docket No. 1 at 3.)

Title 26, Section 6321 of the United States Code provides that if a person refuses to pay any federal tax, a lien attaches upon all property and rights to property of the delinquent taxpayer in favor of the Government. See 26 U.S.C. § 7402(a); see also Rodgers, 461 U.S. at 683. For a federal tax lien to be valid, the government must (1) "make an assessment of a taxpayer's tax liability;" (2) "issue a notice of the assessment and a demand for payment within 60 days after the

assessment is made;" and (3) "the taxpayer must neglect or refuse to pay the full amount demanded." U.S. v. Tempelman, 111 F. Supp. 2d 85, 90 (D.N.H. 2000) (citing 26 U.S.C. §§ 6203, 6303, 6321). The lien typically arises at the time of the assessment and continues until the liability for the amount is satisfied. See 26 U.S.C. § 6322. The Government then can enforce a lien in various ways, including by filing a civil action in district court. Tempelman, 111 F. Supp. 2d at 91-92.

As discussed above, the United States alleged proper assessments of Defendants' tax liabilities, claiming to have demanded payments that Defendants failed to satisfy. (Docket No. 1 ¶¶ 4-6.) Consequently, federal tax liens attached to the property. Id. ¶ 9. Moreover, the United States provided nine different dates on which a delegate of the Secretary of the Treasury filed Notices of Federal Tax Liens in this District Court. Id. ¶ 10. These allegations create the presumption that the IRS put Defendants on notice of the federal liens and demand for payment. See Geiselman v. U.S., 961 F.2d 1, 6 (1st Cir. 1992). Because Defendants have not presented any evidence to rebut this presumption, the Government has sufficiently pled facts to find that a valid federal lien attached to the Aircraft at the time of the assessments.

The Government claims that Defendant Guillén's act of transferring title and selling the Aircraft, despite knowing it was encumbered by valid federal tax liens, constitutes tortious conversion. (Docket No. 1 at 3-6.) Other courts have recognized common law actions for conversion in similar situations. See, e.g., U.S. v. Peabody Const. Co., Inc., 392 F. Supp. 2d 36, 37 (D. Mass. 2005) (Government brought claim alleging a trustee had misappropriated property, "effectively arguing conversion, since the trustees knew of the IRS lien prior to accepting such funds."); U.S. v. Henshaw, 388 F.3d 738, 744 (10th Cir. 2004) (holding the United States has the right to bring a common law conversion action to recover its property). Because there is no federal

**Civil No. 15-1025 (GAG)**

law of conversion, district courts examine local law to evaluate the tort.  See Peabody Const. Co., Inc., 392 F. Supp. 2d at 37 (applying Massachusetts law to the Government's claim of conversion).

Under Puerto Rico law, conversion is "not the simple acquisition of another's property, but the malicious and wrongful privation of the ownership rights, the illegal exercise, or the assumption of authority over another's property, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and enjoyment."  Barreto Peat, Inc. v. Luis A. Ayala Colon Sucrs., Inc., 709 F. Supp. 321, 323 (D.P.R. 1989) (citing Hull Dobbs Co. v. Superior Court, 81 P.R.R. 214, 222 (1959); Heirs of Sorbá v. Viñas, 49 P.R.R. 31 (1935)).

The Government has pled sufficient facts to support the plausibility that Defendant Guillén tortiously converted a valid federal tax lien, intentionally depriving the IRS of its rights to the Aircraft.  In the complaint, the Government alleged that Defendant Guillén had knowledge of GZ Construction's preexisting obligation to the United States and the federal tax liens that arose upon the Aircraft. (Docket No. 1 ¶¶ 10, 11, 14.)  The Government also alleged that between February 25, 2010 and August 3, 2010, the IRS Revenue Officer met with Defendant Guillén and explained that he needed to sell the Aircraft and use the proceeds to pay GZ Construction's tax liabilities, or the IRS would seize the Aircraft pursuant to the lien that had attached to the property.  Id. ¶ 14. The Government further pled that immediately after this meeting, and despite knowledge of his obligation to the United States, Defendant Guillén transferred title of the Aircraft to his son. Id. ¶ 15.  On October 27, 2010, the Aircraft was allegedly sold to a third party, and on December 10, 2010, Defendant Guillén admitted that the proceeds from the Aircraft were used to substantiate other creditors' claims. Id. ¶ 17.

From these facts, it is plausible to infer Defendant Guillén's intent, maliciousness, and desire to defraud. Id. ¶¶ 5, 10, 13-14.  Given that Defendant had an obligation to the United States,

**Civil No. 15-1025 (GAG)**

by virtue of unpaid tax liabilities, the Government efficiently alleged the right granted by a federal tax lien upon the Aircraft.  It is certainly plausible that Defendant engaged in tortious conversion by exercising domain over the burdened property and depriving the United States of its lawful property right. Thus, the Government's complaint adequately states a claim upon which relief may be granted, and Defendants' motion to dismiss this claim is also **DENIED**.

**IV.   Conclusion**

For the reasons set forth above, the court **DENIES** Defendants' motion to dismiss at Docket No. 16.

**SO ORDERED.**

In San Juan, Puerto Rico this 31st day of December, 2015.

*s/ Gustavo A.  Gelpí*
GUSTAVO A.  GELPÍ
United States District Judge